IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOESPH DIVISION

| | |
|---|---|
| ARCHIE SAMFORD, TRUSTEE, ) | |
| ARCHIE SAMFORD TRUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-6076-CV-SJ-HFS |
| ) | |
| JAMES DELONG ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff, Archie Samford, Trustee of Archie Samford Trust, a resident of Tennessee, commenced this action alleging negligence against defendant, James Delong, regarding a crop insurance policy. Presently pending before the court is Delong's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds of res judicata and collateral estoppel.

Background

Samford farmed various crops in Mercer County, Missouri, and on or about March 12, 2008, he applied for and was issued a federally-reinsured Multiple Peril Crop Insurance policy from NAU Country Insurance Company "NAU". (Complaint: ¶¶ 8-9). The policy covered approximately 700 acres of "new breaking ground located in Mercer County; however, the land was not insurable absent a Written Agreement with the Risk

Management Agency "RMA". (Id: ¶¶ 9-10). Although Samford's initial request for a Written Agreement was denied, by letter dated August 4, 2008, the request was subsequently approved. (Id: ¶¶ 11-12). The RMA required that the planted acreage be inspected and appraised by NAU (an approved insurance provider) through a duly appointed crop insurance adjuster. (Id: ¶ 14). Notwithstanding the issuance of the policy, NAU required that planted acreage be inspected and appraised the Written Agreement to be signed by September 3, 2008. (Id: ¶ 13).

On August 29, 2008, Delong (the NAU crop adjuster) met with Samford and inspected the acreage. (Id: ¶¶ 15-19). On August 30, 2008, the two met again, and Samford signed the Written Agreement and the soybean Appraisal Worksheets; however, he did not date the documents. (Id: ¶ 20). Delong took custody of the documents with assurances to Samford that he would comply with the September 3, 2008 deadline; instead, Delong dated the documents September 8, 2008, and mailed the documents on September 13, 2008. (Id: ¶¶ 21-22).

By letter dated September 16, 2008, the regional office of RMA located in Topeka, Kansas approved the application for the peril crop insurance in the amount of $187,268 on 692.98 acres of new breaking ground. (Id: ¶¶ 23-24). Subsequently, by letter dated September 30, 2008, the RMA rescinded its approval noting that the written agreement was not signed by the expiration date of September 3, 2008, but rather, on September 8, 2008. (Id: ¶ 25). On November 18, 2010, the matter was submitted to arbitration and by a decision dated December 17, 2010, the abitrator determined, among other things, that Samford was not entitled to insurance indemnification. (Exh. 9, Arbitrator's Award; In the matter of Arbitration between "Archie Samford, Trustee of the

Archie Samford Trust and NAU Country Insurance Co."). Pursuant to an employment contract between Delong and NAU, the arbitrator defined Delong as an independent contractor, and not an employee, agent, or apparent agent. (Id, pg. 1). The arbitrator also determined that it was Samford's responsibility to insure the paperwork was completely and accurately completed, signed, and timely received by the RMA. (Id, pgs. 1-2). The arbitrator found that both NAU and Delong correctly followed the federal rules and regulations set forth by RMA, and stated in the crop insurance policies. (Id, pg. 2). Thus, because the arbitrator found that Samford failed to timely submit the paperwork, no policy existed and he was not entitled to insurance indemnity on the soybean crop. (Id).

Samford then commenced the instant action claiming that Delong had a duty to exercise reasonable care as it pertained to the completion and timely submission of the documents and breached that duty. Samford contends that due to the untimely submission of the documents he was prevented from planting and harvesting a successful crop due to conditions that that would otherwise have constituted a covered cause of loss under the NAU policy. (Suggestions in Opposition: pg. 4).

## Discussion

### Standard of Review

In considering a motion to dismiss all facts alleged in the complaint must be assumed to be true and the complaint is generally construed in the light most favorable to the plaintiff. <u>Peterson v. Comcast Cable</u>, 2009 WL 4723334 *2 (D.Minn.). However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the

legal requirements of the claim to avoid dismissal, and must claim enough facts to state a claim for relief that is plausible on its face. Id; citing, Ashcroft v. Iqbal, 556 U.S. 662, 668-9 (2009); see also, Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).

Based on the arbitration agreement between Samford and NAU and a review of written documents and oral testimony, the arbitrator found the disputed issues to be:

1.) The employment status of Delong, the crop adjuster, as either an employee of NAU or an independent contractor;

2.) The signing date on the written agreement and appraisals;

3.) The responsible party for meeting the deadlines set by the Federal Crop Insurance Corporation "FCIC" – Risk Management Agency "RMA"

(Doc. 4; Amended Complaint: Exh. 9, pg. 1)

The arbitrator ultimately concluded that based on an employment contract between Delong and NAU, Delong was an independent contractor; not, an employee, agent, or apparent agent. (Id). The arbitrator determined that it was Samford's responsibility to ensure all forms were correctly completed, signed, dated, and timely delivered to the RMA. (Id). The arbitrator also found that NAU and Delong correctly followed all of the federal rules and regulations set forth by the RMA. (Id, pg.2). Thus, the arbitrator concluded that since the forms did not timely reach the RMA there was no insurance coverage, therefore, Samford was not entitled to any insurance indemnity on the soybean crop. (Id).

Delong seeks dismissal of the negligence claim asserted against him in the present action on the grounds that plaintiff is estopped from bringing this action under the doctrines of res judicata and collateral estoppel. Delong cites caselaw in support of his

argument that plaintiff's claim is barred under these doctrines and refers to the above findings of the arbitrator in favor of NAU. The arbitrator did not, however, consider negligence by Delong, which was immaterial in the claim he rejected because Delong was not an employee of NAU.

In Missouri, the doctrine of res judicata, commonly referred to as claim preclusion, precludes the reassertion of a cause of action that has been previously adjudicated in a proceeding between the same parties or those in privity with them. Palmore v. City of Pacific, 2013 WL 1129401 *5 (Mo.App. E.D.). Material facts or questions raised in a former action and judicially determined are conclusively settled and may not be litigated again. Id. As such, claim preclusion also bars a litigant from bringing, in a subsequent lawsuit, claims that *should* have been brought in the first suit. Id, at *6. Thus, the proper test for determining whether res judicata applies is whether the case arises out of the same transaction or occurrence and involved the same parties, subject matter, and evidence, not whether a new suit states a different legal theory. Id. Res judicata adheres where "four identities" are met: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. Id. Res judicata applies not only to losers, but also to parties that prevailed in an earlier judgment. Id.

Delong was not a party to the arbitration proceeding and a main issue in contention, among others, is whether his interests are so closely intertwined with those of NAU that the two are in privity. The result of such a finding, in conjunction with the other enumerated factors, would serve as a bar to Samford's present claim. According to

Samford, however, the Multiple Peril Crop Insurance made no provision for joinder of third parties. (Opposing Suggestions: pg. 6). The limited record at bar, however, does not provide a sufficient basis to rule on this question. Cf., St. Jude Medical S.C., Inc., v. Cormier, 2013 WL 1900634 *1 (D.Minn.), in which the court found that plaintiff's claims in a subsequent action were barred by res judicata because the relevant arbitration agreement provided in part that either party without limitation could seek to add a party to the arbitration. It is worth noting that the defendant in St. Jude was considered an *employee* of the defendant company in the prior action, as opposed to the situation at bar where Delong has been defined as an *independent contractor* of NAU.[1] Delong's employment status may have significant impact on preclusion, unlike circumstances where there is a sufficient link between defendants in different actions under an employer/employee relationship. Wors v. Tarlton, 95 S.W.2d 1199, 1207 (Mo.App. 1936); see also, Barton v. Pioneer Drilling Services, Ltd., 2012 WL 6082716 *3 (D.N.D.) (as a general rule an employer is not liable for the torts of an independent contractor except where the employer has retained control over the job). Here, neither party disputes Delong's employment status as an independent contractor, and the negligence claim would not have aided Samford in arbitration.

Delong also claims that Samford is collaterally estopped from bringing the present negligence action. Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication

---

[1] Missouri has no statutory definition of the term independent contractor, but the term is generally described as one who exercises independent judgment and contracts to do a piece of work according to his or her own methods, without being subject to the control of his or her employer except as to the result of his or her work. Howard v. City of Kansas City, 332 S.W.3d 772, 781-82 (Mo. 2011); see also, Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor-Morley, Inc., 146 S.W.3d 411, 417 (Mo.App. E.D. 2004); citing, Trinity Lutheran Church v. Lipps, 68 S.W.3d 552, 557 (Mo.App. E.D. 2001).

on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action. Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166, 1168 (8th Cir. 1989).

Delong argues that because he is in privity with NAU, the negligence claim subsequently asserted in this case is barred. Courts have defined this kind of argument as a defensive use of collateral estoppel. Parklane Hoisery Co., Inc. v. Shore, 439 U.S. 322, 326 n.4 (1979) (defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff previously litigated and lost against another defendant). Samford does not argue that these factors have not been met, rather, he claims that consideration should be given to an unenumerated factor such as equity.

Because the doctrine of collateral estoppel is not rigidly applied, the focus is on whether its application will work an injustice on the party against whom estoppel is urged. Johnson v. LaSalle Bank Nat. Ass'n, 663 F.Supp.2d 747, 754 (D.Minn. 2009); citing, Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir. 1979). Notwithstanding a lack of mutuality or privity courts have taken various factors into consideration such as whether the party adversely affected by collateral estoppel had a full and fair opportunity to litigate the relevant issue effectively in the action resulting in the judgment, whether assertion of the plea of estoppel by a stranger to the judgment would create anomalous results Zdanok v. Glidden Co., Durkee Famous Foods Div., 327 F.2d 944 (2nd Cir. 1964), whether the party adversely affected by collateral estoppel offers a sound reason why he should not be bound by the judgment B.R.DeWitt, Inc. v. Hall, 19 NY2d 141 (1967) and

weight has also been given to the relationship between the party relying upon collateral estoppel and the party who prevailed in the earlier action (Id).

Samford argues that the arbitrator is not a judge, does not have a law license, and was not called upon to adjudicate the negligence claim as it pertained to Delong. (Opposing Suggestions: pg. 6). Although neither party sufficiently addressed this contention, it has been held that the question of whether parties have a valid arbitration agreement that binds them is a question for judicial determination. <u>Union Ins. Co. v. Hull & Co., Inc.</u>, 831 F.Supp.2d 1060, 1067 (S.D.Iowa 2011); <u>citing</u>, <u>AT&T Techs., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986)(arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to submit). In the award decision, the arbitrator noted that his designation as the arbiter of the dispute was based on an "arbitration agreement entered into by the above-named parties," that being Samford and NAU. Notwithstanding the absence of Delong as a participant in an agreement to arbitrate, the arbitrator determined the employment status of Delong and whether he violated certain rules and regulations. There is no dispute that Samford and NAU were bound by a written agreement to arbitrate. However, neither NAU nor Delong contend that arbitration was also binding on Delong, and the parties have not briefed the question of whether Delong, either by contract or objective conduct, agreed to arbitration. In the event the agreement to arbitrate disputes did not include Delong, it is questionable whether he could have been compelled to do so.

The party asserting issue preclusion has the burden of both pleading and proving it. <u>Pool v. Orkin, Inc.</u>, 2010 WL 5452712 *4 (S.D.Iowa); <u>see</u> <u>also</u>, <u>CRST Van Expedited, Inc. v. J.B.Hunt Transport, Inc.</u>, 2005 WL 741911 *13 (N.D.Iowa). Even if all of the

enumerated factors are met, the doctrine will not be applied if application would not serve the doctrine's underlying key principles. CRST Van Expedited, 2005 WL 741911 at *13; citing, Lucido v. Superior Court, 795 P.2d 1223, 1226 (Cal. 1990). These public policies include preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation strongly influence whether its application in a particular circumstance would be fair to the parties and constitute sound judicial policy. I do not accept Delong's argument that privity bars the negligence claim asserted against him simply because of the employment contract he enjoyed with NAU, when the issue was never presented in arbitration and would not have allowed Samford to prevail against NAU, the defendant in arbitration.

Accordingly, it is hereby

ORDERED that defendant's motion to dismiss (ECF doc. 9) is DENIED.[2] The clerk is directed to issue a Notice of Pretrial Procedures for a discovery schedule and other pretrial matters.

/s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

July 18, 2013

Kansas City, Missouri

---

[2] Although not presently before me, in the absence of preclusion, the complaint contains sufficient facts to state a claim for relief.